UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

_____

| | |
|---|---|
| MICHAEL BIRKLETT | CIVIL ACTION NO. 03-0576-P |
| versus | JUDGE STAGG |
| BURL CAIN, WARDEN, ET AL. | MAGISTRATE JUDGE HORNSBY |

_____

## REPORT AND RECOMMENDATION

### Introduction

A Caddo Parish jury convicted Michael Birklett ("Petitioner") of two counts of second degree murder. Petitioner pursued several errors on direct appeal and through a post-conviction application. He now seeks habeas corpus relief from this court based on five issues. For the reasons that follow, it is recommended that the petition for writ of habeas corpus be denied.

### Attack on the Amended Indictment

Shreveport police were alerted to a shooting. They found a car, engine running, with two occupants dead from multiple gunshot wounds. Police later learned that the two dead men had planned to meet Petitioner and his friends to sell them cocaine. An investigation turned up the names of four suspects, including Petitioner, who were from Houston. Three of the men were arrested a few days after the shooting, but Petitioner was not found and arrested until more than one year later. In the meantime, a Caddo Parish grand jury had indicted him on two counts of first degree murder. Tr. 10. An Amended Indictment was

later issued by the District Attorney that downgraded the charges to two counts of second degree murder.  Tr. 9.

Petitioner complains that the Amended Indictment was neither signed by a grand jury foreman nor returned as an actual indictment by a grand jury.  He argues, particularly in the reply (Doc. 19) filed by counsel, that this method of charging him violated the grand jury clause of the Fifth Amendment's provision that no person be held to answer for an infamous crime "unless on a presentment or indictment of a Grand Jury."  The grand jury requirement is applicable to federal prosecutions, but the Supreme Court has held that it is not binding on the states.  Campbell v. Louisiana, 118 S.Ct. 1419, 1423 (1998); Hurtado v. California, 4 S.Ct. 111 (1884).  See also Freeman v. City of Dallas, 242 F.3d 642, n. 5 (5th Cir. 2001).

The issue also faces an exhaustion defense.  Petitioner's arguments to this court invoke the grand jury clause of the Fifth Amendment to the federal constitution, but a review of his post-conviction application shows that the thrust of his argument in state court was that the procedure ran afoul of state law.  It is, therefore, questionable whether the federal argument presented to this court was properly exhausted.  See Baldwin v. Reese, 124 S.Ct 1347 (2004).         Procedural bar is also a defense to this issue. The last reasoned state court decision to address this issue was that of the district court, so it is the one that matters for procedural bar purposes.  Ylst v. Nunnemaker, 111 S.Ct. 2590 (1991).  That decision rejected the indictment claim both on the merits and because it was waived when Petitioner did not raise the claim prior to trial in a timely motion to quash.  The lack of a timely motion

to quash an indictment has been recognized as a procedural bar. <u>Williams v. Cain</u>, 125 F.3d 269, 276 (5th Cir. 1997). Although the state habeas court went on to address the merits of the claim, the rule in the Fifth Circuit is that when a state court bases its decision upon the alternative grounds of procedural default and a rejection of the merits, the federal court must, absent a showing of cause and prejudice, deny habeas relief based on the procedural default. Tr. 2059. <u>Hughes v. Dretke</u>, 412 F.3d 582, 592 (5th Cir. 2005). Even assuming Petitioner could show cause, he could not show prejudice. The Fifth Circuit has recognized that defects in an indictment do not undermine confidence in the outcome of a trial where a jury found proof of guilt beyond a reasonable doubt. <u>Pickney v. Cain</u>, 337 F.3d 542, 546 (5th Cir. 2003).

Petitioner also complains that his attorney rendered ineffective assistance because he did not file a timely motion to quash the Amended Indictment. That claim is governed by <u>Strickland v. Washington</u>, 104 S.Ct. 2052 (1984), which requires a showing of deficient performance and prejudice. The prejudice component is present only if there is a reasonable probability that, but for the error, the result of the trial would have been different. 104 S.Ct. at 2068. For the reasons expressed in <u>Pickney</u>, Petitioner cannot show prejudice stemming from the lack of a motion to quash the charging instrument.

**Ineffective Assistance of Counsel: Suppression Issues**

**A. Introduction**

Petitioner was arrested in Houston. Police officers in that city read Petitioner his *Miranda* rights. He waived his right to remain silent and gave a statement that the state appellate court characterized as "an integral part of the State's case against him." Petitioner complains that his attorneys rendered ineffective assistance when they (1) did not adequately develop the record (especially with regard to a contention that Petitioner is mentally retarded) with respect to a motion to suppress the statement, (2) improperly stated at a hearing on a request to reconsider the motion to suppress that the additional evidence he wished to produce went more to the weight than admissibility of evidence, and (3) did not insist the judge make a separate finding as to whether Petitioner made a voluntary and intelligent waiver of his *Miranda* right to silence. Petitioner also argues, in a claim that will be addressed in another portion of this recommendation, that the trial court erred in denying the motion to suppress. The facts related to both issues are similar and are summarized below.

**B. The Officers' Testimony**

Petitioner's counsel filed a Motion to Suppress Statements that contended any statements should be suppressed because Petitioner was not advised of his constitutional rights prior to making them, the statements were involuntary because of an intoxicated or drugged condition, that a mental defect rendered Petitioner incapable of distinguishing right

from wrong, and the statements were generally "obtained unconstitutionally." Tr. 330-31. A hearing was held three days later.

Sgt. David Ferguson of the Houston police department testified that he and his partner, Sgt. Yanchak, checked Petitioner out of his cell. Ferguson read Petitioner his <u>Miranda</u> rights. Those rights were waived, and Petitioner gave a statement. Petitioner first denied any involvement in the crimes, but when Ferguson confronted him with incriminating information, Petitioner asked what would happen if he talked to Ferguson. The officer explained that he would type Petitioner's statement as he gave it, allow Petitioner to read over the written statement and make any additions or corrections, and let Petitioner sign the statement in front of witnesses if he agreed with everything in it. Tr. 1646, 1663-69.

Although Ferguson had read Petitioner his <u>Miranda</u> rights at the commencement of the interview, he read the rights to Petitioner again before transcribing what would become the written statement. He read each right and, after reading it, asked Petitioner if he understood what had just been read to him. Petitioner said he did understand but waived his right to silence and would give a statement. After Petitioner gave the statement, Ferguson had Petitioner read the first two lines of the first paragraph out loud so that Ferguson could know that Petitioner could read. Petitioner told Ferguson that he attended school through the 11th grade, and he appeared coherent and not under the influence of drugs or alcohol. Ferguson later called in Sgts. Weber and Yanchak to witness the signing of the statement. Petitioner did not request to speak with an attorney during the interview. Tr.1669-74.

Sgt. Larry Weber, also with the Houston police department, testified that he was present when Petitioner made his statement to Sgt. David Ferguson. Weber did not question Petitioner about his educational experience, but he did determine that Petitioner could read and write by having him read his Miranda warnings out loud and give assurance that he could read. Counsel asked Weber some questions directed to whether Petitioner was under the influence of drugs or alcohol at the time he gave the statement, but no issues related to the intoxication testimony have been urged before this federal court. Tr. 1582-1606.

Sgt. E. T. Yanchak testified that he was not present in the room when his partner, Sgt. Ferguson, typed Petitioner's oral statement, but he was asked to witness when Petitioner signed the statement. Yanchak testified that he asked Petitioner, among other questions, if Sgt. Ferguson had read him his rights as stated on the top of the form and whether Petitioner understood those rights. Petitioner said that he did. Yanchak then asked Petitioner to initial six places on the form to indicate his acknowledgment of certain rights and waivers. Yanchak then asked Petitioner if he could read and if he had read the complete statement. Petitioner said that he could and that he did. Officer Yanchak then asked Petitioner to sign each page of the statement. Tr. 1606-42.

Defense counsel, after the officers testified, said that he would like to recess the hearing and request an out-of-state subpoena for some information (apparently related to Petitioner's education). The court granted the request. Tr. 1709-12.

### C. Petitioner's Statement

Petitioner's written statement appears at Tr. 484-87. It shows Petitioner's initials by each right required by <u>Miranda</u> and a statement that those rights are knowingly, intelligently and voluntarily waived. Petitioner's statement detailed how he met the three other suspects (whom he knew as Youngster, Boo and Donnie, Jr.) in Houston in the days before the murders. He accompanied them and some other people (whose names he did not know) on a trip to Shreveport. When they arrived in Shreveport, Petitioner saw that the three men were carrying a .357 revolver, a 9 mm Mac 11, and a 9 mm handgun. They told Petitioner that they carried the weapons for protection because Shreveport had a lot of gang activity. The four suspects were hanging around a body shop in Shreveport drinking beer when two men came in and asked about buying a kilo of cocaine. The men were told to return later. Petitioner then learned that his three companions planned to rob the men of their purchase money. The three companions, Petitioner and a man called Bo Bo later got in a van for what Petitioner believed was a trip to take Bo Bo home, but the men actually went and met the two men who wanted to buy drugs. A robbery and two murders ensued. Petitioner admitted that, during the incident, he had the Mac 11 and held it on the two victims and told them not to move, but he denied firing the weapon. Petitioner said that after his companions killed the two victims and took their money, Boo gave him $700 of the spoils.

### D. Judge Thaxton's Ruling

Judge Thaxton, who presided over the hearing on the motion to suppress, stated that the hearing would resume on August 22, 1995 (Tr. 483(G)), but more than a year passed with

no indication on the record of any further action with respect to the motion. There is a transcript of the prosecutor appearing before Judge Thaxton a few weeks later for what had been scheduled to be an opportunity for defense counsel to present additional evidence. The judge stated that defense counsel had been present in court on other matters that day but was not feeling well. The judge and prosecutor stated for the record that they would be available at any time between then and the trial to consider any additional evidence that defense counsel wished to present. The judge suggested that if defense counsel were to contact him or the prosecutor, that the person contacted would take steps to obtain a docket setting to hear the additional evidence. Tr. 1839-44.

A few months later, a new attorney was representing Petitioner, but he did not appear at a hearing that was set for purposes of receiving additional evidence. Judge Thaxton stated that he would issue a minute entry that any additional evidence be submitted in writing by a certain date or he would consider the motion submitted for decision. Tr. 1736-38. Judge Thaxton later issued a written ruling. He remarked that the matter had been held open for the filing of additional evidence but, "[d]espite several subsequent settings, no additional evidence has been submitted by the defendant" so the court deemed the matter submitted. Judge Thaxton found that the evidence "overwhelmingly supports the conclusion that the statements made by the defendant . . . are admissible." Tr. 432.

### E. Judge Thaxton Denies Reconsideration and Reopening

A few months later, attorney Rollin Cole was appointed to represent Petitioner. Five prior attorneys had been relieved of their appointments, with most of them doing little or no

work. Mr. Cole filed a motion to reconsider and for the taking of further evidence. The principal grounds stated in the motion were that (1) statistical evidence indicated a strong probability that the written report was not a verbatim account of the oral statement (2) the circumstances raised a significant possibility that the written report was "contaminated" (in an unspecified manner), and (3) testing indicated that Petitioner's ability to read and comprehend the statement was limited at the relevant time. Tr. 544-46. The prosecutor's opposition represented that several notices had been mailed to Petitioner's attorney of record during the time between the hearing and Judge Thaxton's ruling, but no additional evidence was ever offered. The prosecutor argued that Judge Thaxton had found the statement voluntary and, therefore, admissible, leaving the relative weight of the statement to the jury. Tr. 419-31. The appellate court's decision states that the motion to reconsider was denied, but neither party has cited to the page where that ruling appears in the record. Mr. Cole also filed another motion to reopen the hearing on the grounds that Petitioner had advised him that he requested a lawyer before he gave his statement. Tr. 559. Once again, the appellate court states that this motion was denied, but the parties do not cite the page on which that order appears.

### F. Judge Emanuel Denies Reconsideration

Trial was held before Judge Ramona Emanuel. Before trial, she heard argument from Mr. Cole with regard to a request that she reconsider Judge Thaxton's ruling on the motion to suppress. Mr. Cole represented that Judge Thaxton told him he ruled on the motion after doing everything he could to have defense counsel complete the submission of evidence.

Cole asked that Petitioner be allowed to testify as to whether he asked for a lawyer and otherwise have his day in court with respect to his challenge to the voluntariness of his statement. He also said: "I will state for the record that the grounds that I put in that prior motion *probably do go to the weight of the statement rather than the admissibility*, but this ground is a constitutional ground and I cannot believe that this court will allow the prosecution to submit this as evidence in this case against this gentleman without giving him an opportunity to controvert the circumstances." (Emphasis added). The prosecution responded that the request to raise the new argument was untimely. Judge Emanuel stated that all relevant issues had been disposed of by Judge Thaxton and that she found no reason to reopen or reconsider the motion. Tr. 1751-61.

### G. Statement Introduced at Trial

The Houston policemen offered at trial testimony similar to that at the suppression hearing. They repeated all of the pertinent information about <u>Miranda</u> warnings, waivers and voluntariness, and they specifically denied that Petitioner ever asked for an attorney. When the prosecutor offered to introduce Petitioner's statement to the jury, defense counsel stated only "object for the record," which was "duly noted" by the trial judge. The jury was given copies of the statement. Tr. 1018-19. It does not appear that Judge Emanuel made a specific finding that the statement was voluntary before it was introduced to the jury.

### H. Dr. Vigen's Testimony

Dr. Mark Vigen, a psychologist, testified for the defense. He testified that Plaintiff, failed the first, fifth and sixth grades and was moved to an alternative school. Dr. Vigen

reviewed Petitioner's school records and discussed recent tests that he administered. The recent tests indicated a reading ability at about the fourth grade level and a full scale IQ of 82, indicating low average intelligence. Tr. 1237-38. Counsel suggested that reading classes in jail had increased the scores since the statement was given to police when Petitioner was 19 years and 7 months of age. Dr. Vigen opined that it would have been "difficult" for Petitioner to read and understand his statement thoroughly. Tr. 1240.

### I. Petitioner's Testimony

Petitioner testified that he was a poor student and "pretty much illiterate because I couldn't read" when he left school. He denied that he was asked to read the <u>Miranda</u> statements out loud and said he would not have been able to do so if asked. Tr. 1297-1301. Defense counsel went through the statement with Petitioner line-by-line. Petitioner agreed that the statement was accurate up to the point where he allegedly said that he was present during the conversation among his companions during which they planned the robbery. Tr. 1308. He also denied that he was present when the two men came to the shop and expressed interest in buying cocaine. He claimed that he was outside riding a motorcycle when the two men came to the shop looking for cocaine, and it was not until later that he learned of their visit and the plan to rob them. Tr. 1308-10. Petitioner agreed that his statement was accurate that he was armed with the Mac 11 by the time his group and the victims met. He testified that Bo Bo told him to take one of the guns but that he did not have to do anything with it. Petitioner said he took the gun because he was scared of his companions. Tr. 1315-18. Petitioner also claimed that Bo Bo grabbed the gun from him when the shooting started and

used it to fire at the victims.  Tr. 1319-20.  Petitioner denied receiving any money from the robbery or telling the police that he did.  Tr. 1323.

Petitioner said he "looked over" the statement but "can't really say I tried to read it because I couldn't read it."  Tr. 1328.  With respect to Petitioner's reading ability and general intelligence, his testimony reflects that he is quite articulate, and at one point his frustration with the prosecutor's interpretation of a passage from his statement that was on display to the jury led him to slip up and say, "let me read it for you."  He then proceeded to read, without any apparent difficulty, several sentences from the statement.  Tr. 1376.  Petitioner admitted that he did voluntarily give a statement to the Houston police, not motivated by threats or promises, and sign it.  He only disagreed with the accuracy of certain passages.  Tr. 1384.  Despite extensive questioning from defense counsel and the prosecutor about the statement, Petitioner never claimed that he asked for a lawyer during the interview.

### J. Analysis of <u>Strickland</u> Issues

As noted in the introduction, Petitioner complains that his attorneys rendered ineffective assistance when they  (1) did not adequately develop the record (especially with regard to a contention that Petitioner is mentally retarded) with respect to the motion to suppress, (2) improperly stated at the hearing on the request to reconsider the motion that the additional evidence Petitioner wished to produce went more to the weight than admissibility of the statement, and (3) did not insist the trial judge make a separate finding as to whether Petitioner made a voluntary and intelligent waiver of his <u>Miranda</u> right to silence.

These issues involve two related issues of voluntariness. First, a *confession* must be *voluntary* to be admissible, and a judge must make a determination of voluntariness before the confession is admitted to the jury. Jackson v. Denno, 84 S.Ct. 1774 (1964). Second, a suspect has a right, recognized by Miranda, to be informed of his right to remain silent when faced with custodial interrogation, but the suspect may waive that privilege if the *waiver* is made *voluntarily*, knowingly and intelligently. Miranda v. Arizona, 86 S.Ct. 1602, 1612 (1966).

The inquiry whether a Miranda waiver is coerced has "two distinct dimension." Moran v. Burbine, 106 S.Ct. 1135, 1141 (1986). First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Id. Second, the waiver must have been made with a full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it. The totality of the circumstances surrounding the interrogation must reveal both an uncoerced choice and the requisite level of comprehension for a court to properly conclude the Miranda rights were waived. Id. See also Colorado v. Spring, 107 S.Ct. 851, 857 (1987). A finding of a voluntary and valid Miranda waiver is usually tantamount to a conclusion that the resulting confession was also voluntary. Missouri v. Siebert, 124 S.Ct. 2601, 2608 (2004). Diminished mental ability can be relevant to both of the voluntariness inquiries. See U.S. v. Robles-Ramirez, 93 F.Supp.2d 762, 768 (W.D. Tex. 2000) ("The general rule in the Fifth Circuit is that the fact that a confession is made by one

whose mentality is subnormal is to be taken into consideration and viewed as a fact indicating, although not establishing, that the confession was lacking in voluntariness.")

Defense counsel were permitted ample time to submit additional evidence relevant to the suppression hearing, but none was offered before Judge Thaxton ruled that the statement was admissible. A newly appointed counsel later attempted to reopen the hearing, but Judge Emanuel denied that request with little explanation. One or more of Petitioner's counsel was arguably remiss for failing to submit any timely evidence to better support the motion to suppress. The state appellate court, on direct appeal, acknowledged the "poor handling" of Petitioner's case by several of his appointed attorneys, particularly with respect to their failure to advance the motion to suppress. State v. Birklett, 749 So.2d 817, 820-21 (La. App. 2d Cir. 1999). The appellate court went on to analyze the claim of ineffectiveness under the standards of Strickland v. Washington, 104 S.Ct. 2052 (1984) and held: "While we find that Defendant was denied effective pre-trial counsel, prior to the appointment of his present counsel, we cannot say that such denial prejudiced his defense so as to warrant reversal of his convictions." Id. at 821. When assessing prejudice, the court noted that, at the hearing on the motion to reconsider, defense counsel agreed that arguments about Petitioner's limited ability to read and comprehend his statement at the time it was made such were directed more toward the weight of the statement than its admissibility. The appellate court stated its agreement with counsel "that such is not a question of admissibility, but of weight of evidence." 749 So.2d at 821-22.

It appears that both counsel and the appellate court are incorrect. If an accused lacks the requisite level of comprehension of his rights, due to mental deficiencies or inability to read, that is relevant to whether he knowingly and intelligently waived his <u>Miranda</u> rights, and that is an issue of admissibility. Counsel was, however, able to submit at trial all additional evidence he had on these issues. Both Dr. Vigen and Petitioner testified at length with respect to Petitioner's mental abilities and education. Considering that evidence, and Petitioner's failure to testify that he ever asked for a lawyer during his questioning, the appellate court found that any failures to submit that evidence at the more appropriate time before trial did not give rise to a reasonable probability that the result of the trial would have been different.

This court reviews the state court's decision under the deferential standard of 28 U.S.C. § 2254(d)(1). Relief is available on a <u>Strickland</u> claim of this nature only if the state court has unreasonably applied the principles of <u>Strickland</u> to the facts of this case. <u>Williams v. Taylor</u>, 120 S.Ct. 1495, 1523 (2000). The range of reasonableness can depend on the nature of the relevant rule. If it is specific, the range may be narrow. If the rule is a general standard, such as those in <u>Strickland</u>, its application can demand a substantial element of judgment. The more general the rule, the more leeway state courts have in reaching outcomes in case-by-case determinations. <u>Yarborough v. Alvarado</u>, 124 S.Ct. 2140, 2149 (2004). The state court's decision may even be wrong, but habeas relief is available only if its decision is so wrong as to be objectively unreasonable. <u>Neal v. Puckett</u>, 286 F.3d 230, 236 (5th Cir. 2002).

Petitioner's counsel should have done a better job of presenting evidence before trial to support the motion to suppress, and counsel should have argued that the judge was required to make a finding that Petitioner knowingly and intelligently waived his <u>Miranda</u> rights and made a voluntary statement. The potential for prejudice stemming from those mistakes is, in the circumstances of this case, capable of being assessed with a great deal of reliability because Petitioner presented at trial all of the evidence he possessed with respect to the knowing and intelligent waiver issue. Had that evidence been presented at the hearing on the motion to suppress, there is, at best, only the slightest possibility that a judge would have ruled the statement inadmissible.

With respect to the basic voluntariness of the statement, there was no evidence, and Petitioner specifically denied, that police used threats, intimidation or other coercion that would render his statement involuntary. The failure of counsel to insist that the trial judge make a pre-admission, specific finding of voluntariness consistent with Petitioner's own version of the facts caused no prejudice and does not warrant a new trial. Furthermore, Judge Thaxton found, after hearing evidence and argument on the voluntariness issues, that the statement was admissible. His conclusion perhaps should have been fleshed out by an articulation of the underlying factual findings, but his conclusion implies that he found voluntariness. <u>See</u> <u>U.S. v. Andrews</u>, 22 F.3d 1328, 1338 (5th Cir. 1994)(finding of valid <u>Miranda</u> waiver may be inferred from record).

As for the validity of the <u>Miranda</u> waiver, the evidence with respect to Petitioner's education level and reading ability was not convincing that Petitioner was incapable of

understanding the <u>Miranda</u> rights that he waived. Dr. Vigen's review of Petitioner's school records show that Petitioner could read, contrary to Petitioner's testimony at trial that he was illiterate. Petitioner also demonstrated at trial that he could read, and the record is filled with his well written pro se motions (although he now says that he copied them or had help with them). His testimony also showed him to be quite articulate and able to respond well to the lengthy cross-examination conducted by the prosecutor. Petitioner has not suggested that he possesses any evidence relevant to his waiver that he did not present at trial, and nothing in the record causes the undersigned to have any significant doubt that Petitioner knowingly and intelligently waived his <u>Miranda</u> rights before he gave his voluntary statement. Under the circumstances, the state court was not objectively unreasonable when it determined that defense counsel's failings with respect to the motion to suppress did not result in prejudice within the meaning of <u>Strickland</u>.

**Decision on Motion to Suppress**

Petitioner also argues that the trial court violated his Fifth Amendment rights when it denied his motion to suppress despite his low IQ and alleged mental retardation. First, the trial court's decision appears to be sound based on the facts presented. Second, for the reasons stated above, any mistakes by the trial court in handling the motion to suppress did not result in prejudice adequate to vacate the convictions. Finally, as outlined in the State's Amended Answer (Doc. 22) and Petitioner's response (Doc. 25), Petitioner did not squarely present this issue to the state courts during his direct appeal or during the first three steps of his post-conviction application litigation. Petitioner did not specifically present the issue for

the first time until he filed a Supplemental Application for Writ of Review in the Supreme Court of Louisiana.

Applicants for habeas relief must exhaust all claims in state court prior to requesting federal relief. 28 U.S.C. § 2254(b)(1). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court. Petitioner did present this issue to the highest state court, but the exhaustion doctrine also requires that the highest state court be provided a "fair opportunity to pass upon the claim," which in turn requires that the applicant "present his claims before the state courts in a procedurally proper manner according to the rules of the state courts." Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999).

The Fifth Circuit noted in Dupuy v. Butler, 837 F.2d 699 (5th Cir. 1988) that Louisiana appellate courts generally consider only questions that were at issue in the trial court. It questioned, therefore, whether a petitioner who presented his claim in the first instance directly to the Louisiana high court had done so in a procedurally proper manner. The Court did not answer the question in Dupuy because it accepted a waiver of the exhaustion defense from the state and found the claim to lack merit.

This claim lacks merit, for the reasons noted above, but the undersigned also believes that Petitioner has failed to properly exhaust his state court remedies. If federal courts were to deem exhausted claims submitted for the first time to the Supreme Court of Louisiana in a supplemental writ application, it would encourage and result in presentation of many more claims to the federal courts that were never tested by the prosecutor or truly examined by the

state court system in the manner intended by the exhaustion requirement. The Supreme Court of Louisiana exercises discretion as to whether it will hear petitions such as the one presented in this case, and the vast majority of such petitions are denied without any opposition being filed and without comment by the court. That procedure does not permit the state court system a fair opportunity to pass upon the merits of the federal claim before the federal courts are asked to interfere in the administration of the state criminal justice system and order a new trial based on the issue. Treating such an issue as exhausted would also deprive this court of an adequate factual record and statement of reasons by the state courts to afford the proper degree of deference required by Section 2254.

Petitioner claims that the "substance" of the issue was presented to the state courts along with his <u>Strickland</u> claim, but a habeas petitioner who relies on a different legal theory than he did in state court has not properly exhausted his state remedies. <u>Nobles v. Johnson</u>, 127 F.3d 409, 420 (5th Cir. 1997) (state court claim of denial of competent court-appointed psychiatrist did not exhaust related claim that counsel was ineffective for failure to introduce mitigating psychiatric evidence). The attack on the trial court's ruling on the motion and the attack on counsel's performance litigating the motion involve related facts, but they require different legal and factual analyses. Presentation of the <u>Strickland</u> claim to the state courts did not exhaust the attack on the trial court's ruling.

**Hearsay Evidence**

Firearms expert Richard Beighley testified that he examined the bullets and casings recovered at the scene and in the two bodies and determined that three weapons were used:

a 9 mm Mac 11 Cobray pistol that was recovered; a 9 mm weapon that was not recovered; and a .38 or .357 caliber weapon that was not recovered. Tr. 1151-65. The information also appears in a lab report. Tr. 17-18.

Detective Mark Rogers had testified earlier about his crime scene investigation. He said that he found three empty casings or hulls and nine bullets at the scene. The prosecutor took Rogers through a series of questions that asked him to assume certain information would later be presented by the coroner or firearms expert, and he occasionally asked Rogers to assume other facts, all of which were designed to determine how many guns were used and how many shooters were likely at the scene. Tr. 1132-36. After asking a number of questions that included assumptions, the prosecutor asked Rogers:

> "But if we also happen to have, *if we also happen to know information from an eyewitness at the scene of this murder*, that one person with a .357 magnum pistol went to the driver's side and that another person holding this Mac 11 pistol went to the driver's side, while a third person with a 9 millimeter handgun pistol went to the passenger side, would that be additional information to take into account to support your opinion that there were three, not two shooters at the scene of this homicide?"

Tr. 1137 (emphasis added). Rogers answered that it would change his opinion.

Petitioner argues that this question makes reference to "alleged" eyewitness testimony that is hearsay. Petitioner pressed this argument on post-conviction application, and the trial judge rejected it. She found that the record showed the objected-to material was not hearsay but merely a hypothetical scenario posed to the witness. She added that the defense did not object to the comments, and he reviewed and scrutinized the statements during cross-examination. Tr. 2059. The state appellate court denied a writ application on the showing

made, Tr. 2086, and the Supreme Court of Louisiana denied writs without comment. Tr. 2117.

The Due Process Clause provides a mechanism for relief when a state court wrongfully admits evidence, but only if the evidence was so unduly prejudicial that it rendered the trial fundamentally unfair and, therefore, violated the Constitution. Bigby v. Cockrell, 340 F.3d 259, 271-72 (5th Cir. 2003), citing Dawson v. Delaware, 112 S. Ct. 1093 (1992) and Estelle v. McGuire, 112 S.Ct. 475 (1991). A petitioner's claim will fail absent a showing that the evidence had a substantial and injurious effect or influence in determining the jury's verdict. Bigby, 340 F.3d at 272. Of course, for this court to order relief, it must find that the state court performed an objectively unreasonable application of those principles.

To the extent the prosecutor's questions could be considered evidence, they did not violate the constitution or render the trial fundamentally unfair. When the question is taken in context, it is plain that the prosecutor did not suggest that there was an actual eyewitness to those facts. Rather, he was asking the detective to assume a variety of scenarios, and the hypothetical eyewitness merely provided a background for one scenario. The state court's resolution of this issue was not objectively unreasonable.

**Prosecutorial Misconduct**

The prosecutor, B. Woodrow Nesbitt, Jr., was cross-examining Dr. Vigen about the accuracy of Petitioner's personal history and Dr. Vigen's report when he said he did not

recall Dr. Vigen telling the jury that part of Petitioner's history included some time in jail.

The specific question was:

> Now I don't recall that you told the jury this part when you were reviewing your report with Mr. Cole, *he remained in a Houston jail for four and a half months and then he spent one year in jail in Beaumont for a robbery and kidnaping charge*, which was eventually dropped. Since April of 1994 he has been incarcerated at the Caddo Correctional Center. Doctor, why is it you did not want to tell the jury that statement, I'm not saying it has any significance or anything having to do with his guilt. Why were you hiding from the jury, you and Mr. Cole, the statement that *Mr. Birklett spent time in Texas involving robbery, kidnaping charges apparently out of Beaumont that got dropped*, thus delaying his return to the fine and great State of Louisiana, so that this prosecution could commence? Was there a reason for that?

Tr. 1274 (emphasis added). Defense counsel objected and, outside the presence of the jury, moved for a mistrial based on the reference to arrests for other crimes. The prosecutor responded that information contained in a testifying expert's report is open for cross-examination. The trial judge denied the motion for mistrial, but said she was "gravely concerned" about what appeared to be "some blatant references by the State as to other crimes evidence and other bad acts which would be inadmissible." She did not believe that the questions had risen to the level to justify a mistrial, and she offered to consider an admonition to the jury regarding other crimes evidence. Tr. 1274-78. The judge also required the prosecutor to take down an enlarged copy of Dr. Vigen's report that contained the offending other crimes information. Petitioner complained on direct appeal that the trial judge should have granted a mistrial. The appellate court found the prosecutor's actions "troubling" and "agree[d] with Defendant that the denial of the mistrial was improper;

however, we find that it does not rise to the level of a prejudicial error." <u>Birklett</u>, 749 So.2d at 824.

It is questionable whether Petitioner properly exhausted this issue as a *federal* claim. He presented the issue during his direct appeal. His writ application to the Supreme Court of Louisiana presents the argument in terms of whether a mistrial should have been granted because Louisiana Code of Criminal Procedure Article 770 (prohibiting mention of other crimes) and related jurisprudence were violated. Tr. 1942-44. The argument did not invoke federal constitutional law except with respect to the proper harmless error standard of <u>Chapman v. California</u>, 87 S.Ct. 824 (1967). The issue was not raised again in the post-conviction application. Tr. 2030-45.

Although the State has not squarely raised an exhaustion defense to this claim, it does not appear that a federal claim was fairly presented to the state courts based on the other crimes issue. <u>See</u> <u>Baldwin v. Reese</u>, 124 S.Ct. 1347 (2004); <u>Duncan v. Henry</u>, 115 S.Ct. 887 (1995). Those cases recognize that a petitioner who presents his argument in state law terms in the state court and attempts to convert it to federal claims in a habeas petition has not properly exhausted his state court remedies with respect to a federal claim.

The claim also fails on the merits. A federal habeas court is not concerned with state procedural and evidentiary requirements unless their violation rises to the level of constitutional error. The admission of irrelevant evidence does not rise to constitutional error unless it violates a specific federal constitutional right (such as the Fifth or Sixth Amendment) or is so egregious that it renders the petitioner's trial fundamentally unfair.

Brown v. Dretke, 419 F.3d 365, 376 (5th Cir. 2005).  See also Romano v. Oklahoma, 114 S.Ct. 2004, 2011-12 (1994) (irrelevant evidence and improper remarks by prosecutor did not warrant habeas relief unless they so infected the proceeding with unfairness as to render the verdict a denial of fundamental fairness).

The state appellate court carefully considered this issue and agreed that the prosecutor acted inappropriately and that a mistrial should have been granted under the rules of Article 770 that mandate a mistrial when the prosecutor comments on inadmissible other crimes evidence.  The court nonetheless found the mistakes harmless in light of the "overwhelming" evidence of guilt and the appellate court's specific finding that "the verdict in this case was 'surely unattributable' to the admission of other crimes evidence."  Birklett, 749 So.2d at 823-24.  To the extent the argument before the state court could be considered a federal claim, that court's resolution of it was not objectively unreasonable.  This court agrees that the prosecutor acted in direct violation of state law and on several other occasions, showed a lack of respect for the trial judge and otherwise acted unprofessionally.  See, e.g., Tr. 1255-56 (prosecutor's cross-examination of Dr. Vigen opened with repeated, irrelevant remarks about Dr. Vigen testifying for a defendant in an unrelated child molestation case) and Tr. 1259 (prosecutor admonished by judge for intentionally making statements at the bench loud enough for jurors to hear).  It is perhaps regrettable that the trial judge did not grant a mistrial so as to deter such prosecutorial misconduct, but this court may review the result of the trial only for constitutional error within the standard of review provided in Section 2254.  Those standards do not permit throwing out the convictions based on the trial court's decision not

to grant a mistrial or the prosecutor's related improper comments on other crimes. The appellate court's finding that the mistake and misbehavior did not affect the outcome of the trial is not objectively unreasonable.

**Ineffective Assistance of Counsel: Lack of Objection**

Petitioner's argument that he received ineffective assistance of counsel is directed primarily at the events surrounding the motion to suppress, but Petitioner also complains that his counsel was ineffective for failing to object to the prosecutor's injection of other crimes evidence. Counsel did object vociferously to the other crimes evidence discussed above, but Petitioner points in this argument to another event during his cross-examination.

Petitioner attempted, during his testimony, to explain the reason for the difference between his statement to the Houston police and his trial testimony. He said he returned to Houston after the shooting without reporting the crime and, even after he was arrested, he held back on telling the full truth because he feared his life was in danger if he talked. Tr. 1322, 1336-37. The prosecutor was exploring the basis for Petitioner's asserted fear when he asked:

> Question:  And you were so afraid of Charles Edward Bo Bo Carter when you were arrested for two counts of murder, you elected to protect him, putting your own life on the line. You were charged with *first* degree murder, weren't you?
>
> Answer:  Yes, sir.
>
> Question:  And that carries the potential of the death penalty, doesn't it?

| Answer: | Yes, sir. |
|---|---|
| Question: | O.K. So that didn't motivate you to tell the police, oh, I didn't shoot Charles Edward Bo Bo the real killer Carter, the rap singer in California, did it? |

Tr. 1337 (emphasis added). The question posed and answered was accurate because Petitioner had originally been charged with the first-degree capital offense. Defense counsel could have perhaps objected to the question, but the question did not actually refer to other criminal acts beyond the murders at issue at the trial; it merely referenced the greater charges that were originally instituted. That might be valid grounds for objection, but the questions on this point were asked and answered quickly, and there was no special emphasis on the fact that Petitioner was being tried for a lesser offense than the original first degree murder charges.

Petitioner raised this argument in his post-conviction application (Tr. 2040-44), along with similar complaints that his attorney was not aggressive enough in objecting to the prosecutor's cross-examination. The trial court judge found that none of the allegations of ineffective assistance met the standards of Strickland and that the claim of ineffective assistance was procedurally barred as repetitive of issues raised on direct appeal. Tr. 2059-60. The reviewing state courts denied relief without comment.

Many of the prosecutor's questions outlined in the post-conviction application indicate a sarcastic tone and include some questions to which objections might have been raised, but defense counsel's lack of objections to those questions was neither ineffective assistance

within the broad range of competence permitted by <u>Strickland</u> nor did it give rise to a reasonable probability that, if objections had been raised, the result of the trial would have been different.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **DENIED** and that Petitioner's complaint be **DISMISSED WITH PREJUDICE.**

## <u>Objections</u>

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. <u>See</u> <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 5th day of December, 2005.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE